IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARIA BEAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                                                      ) | CIVIL ACTION NO.  2:05cv400-CSC |
| ) | (WO) |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

The plaintiff, Maria Bean ("Bean"), filed this lawsuit challenging a final judgment by Defendant Jo Anne B. Barnhart, Commissioner of Social Security, in which she determined that Bean is not "disabled" and, therefore, not entitled to child supplemental security income benefits.[1] In 1997, Bean's mother filed on behalf of Bean an application for supplemental security income benefits. Bean's application was denied at the initial administrative level. Bean then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. In 2000, Bean's mother filed on Bean's behalf an additional application for supplemental security income benefits. A State Agency subsequently found Bean to be disabled due to a combination of impairments that

---

[1] Bean was a child when her mother initially submitted an application on her behalf for supplemental security income benefits; however, Bean was 21 years old at the time she filed this lawsuit. Bean also applied for benefits as an adult. The ALJ discussed both applications in his analysis. In her brief to this court, Bean does not contest the ALJ's conclusion that she was not disabled as an adult. Thus, the court will only address Bean's challenge to the ALJ's decision that she was not disabled as a child.

functionally equaled the requirements of Listing 112.11. The Appeals Council consolidated the 1997 and 2000 applications and remanded Bean's claims to an ALJ for further proceedings. Following a hearing, the ALJ determined that Bean was not disabled. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The parties have consented to the undersigned United States Magistrate Judge rendering a final judgment in this lawsuit. The court has jurisdiction over this lawsuit under 42 U.S.C. §§ 405(g) and 1383(c)(3).[3] Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## I. STANDARD OF REVIEW

In 1996, the President signed into law the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which included a new standard for defining child disability under the Social Security Act. *See* Pub. L. No. 104-193, 110 Stat. 2105, 2188 (1996). The revised statute provides that an individual under 18 shall be considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3] Title 42 U.S.C. §§ 405(g) and 1383(c)(3) allow a plaintiff to appeal a final decision of the Commissioner to the district court in the district in which the plaintiff resides.

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1999). The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.

2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.

3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In reviewing the Commissioner's decision, the court asks only whether her findings concerning the steps are supported by substantial evidence. *See Brown v. Callahan*, 120 F.3d 1133 (10th Cir. 1997).

## II. ADMINISTRATIVE PROCEEDINGS

Bean was 19 years old at the time of the January 13, 2003, hearing before the ALJ and is a high school graduate. (R. 840-41.) Bean alleges that she became disabled due to attention deficit hyperactivity disorder; obsessive-compulsive disorder; a learning disability;

major depressive disorder, recurrent, severe, with psychotic features; psychotic disorder, NOS; obesity; status post displacement fracture of the left distal tibia and fibula with closed reduction and resulting fused left ankle secondary to ankylosing capsulitis or adhesive capsulitis; left peroneal spastic flat foot; osteoporosis and reflex sympathetic dystrophy; and atrophy of the left ankle, essentially frozen with non-pitting edema. (Doc. No. 11, pp. 1-2.) Following the administrative hearing, the ALJ found that Bean has severe impairments of a history of attention deficit hyperactivity disorder; oppositional defiant disorder; malingering; status post fracture of the left tibia/fibula resulting in limited range of motion in the left ankle; and osteoarthritis. (R. 40.) The ALJ concluded that Bean's impairments, when considered singly or in combination, did not meet or medically equal in severity the criteria for any impairment listed at 20 CFR, part 404, Subpart P, Appendix 1. (R. 42.) Accordingly, the ALJ determined that Bean was not disabled. (R. 25.)

### III. DISCUSSION

The sole issue, as asserted by Bean, is whether the ALJ erred in failing to properly consider or credit the opinion of the plaintiff's treating sources. (Doc. No. 11, p. 7.) Specifically, Bean contends that the ALJ improperly discounted the opinions of Dr. Nelson Handal, a psychiatrist, and Dr. Robert Nolan, a psychologist.

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).

However, the weight afforded to a physician's opinions depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

The ALJ discounted Dr. Nolan's opinion regarding the severity of Bean's mental impairments. Specifically, the ALJ determined that there was great disparity between Dr. Nolan's diagnoses and his narrative findings. (R. 39.) In August 1998, Dr. Nolan recommended that Bean receive intensive inpatient treatment and diagnosed her as suffering from major depressive disorder, recurrent, severe psychotic features; obsessive-compulsive disorder; specific phobia (*i.e.* large animals); attention deficit hyperactivity disorder, by history; rule out borderline intellectual functioning/mental retardation; and rule out specific learning disabilities. (R. 556-57.) However, in his evaluation report, Dr. Nolan questioned Bean's motivation during psychological testing. For example, Dr. Nolan noted that Bean "became increasingly resistant to testing procedures and would offer minimal responses while putting her head down and closing her eyes," that she "sometimes seemed as if she were going to sleep," and that her "[m]otivation and effort were minimal." (R. 552.) In addition, the psychologist determined that Bean's validity indices on the Millon Adolescent

5

Clinical Inventory "suggested [Bean] responded to items with extreme debasement including an inclination to deprecate or devalue herself by presenting more troublesome emotional and personal difficulties than are likely to be uncovered by objective review" and that her "tendency to 'fake bad' results is an exaggerated profile with questionable validity." (*Id*.) Dr. Nolan also noted that the validity of Bean's self-reporting on the Children's Yale-Brown Obsessive-Compulsive Scale was questionable and that her profile on the Achenbach Child Behavior Checklist was "generally uninterpretable due to the degree of clinical elevation across all problem areas." (R. 555.)

Frankly, it appears to the court that the ALJ misconstrued the nature of Dr. Nolan's report as containing findings contradicted by the objective testing and narrative. In his concluding paragraphs Dr. Nolan stated that the testing "revealed a person who is extremely disclosing and who presents herself in an extremely negative light." (R. 556) Properly understood, Dr. Nolan's report indicates that he did understand that the claimant might not be objectively truthful. What is telling is Dr. Nolan's comment that "[a]ssessment of clinical syndromes indicate an overall extreme level of clinical distress." *Id*. Thus, the court does not accept the ALJ's determination that Dr. Nolan's opinion should be rejected on the basis that its conclusion conflicts with its narrative findings. This conclusion by the court, however, does not end the analysis because there is other evidence which supports the Commissioner's determination in this case.

The ALJ also found that no evidentiary weight should be accorded to Dr. Nolan's

discounting of a high school teacher's assessment that Bean exhibited no elevations in problem behaviors. In his report, Dr. Nolan noted that, on the Auchenbach Teacher Report Form, Ms. Rape reported "no behaviors as being very true or often true."[4] (R. 555.) Dr. Nolan discounted Ms. Rape's assessment of Bean's behavior on the grounds that "[Ms. Rape] has only known the patient for one month and the patient is only in Ms. Rape's class for one hour each day." (*Id*.) The ALJ discounted Dr. Nolan's opinion on the grounds that Ms. Rape's assessment was consistent with all of the reports from Bean's other teachers. (R. 39.) The numerous teacher questionnaires throughout the record indicate that, although Bean may have had some behavior or learning difficulties, her condition did not prevent her from successfully functioning in a regular classroom. For example, Ms. Marian R. Applewhite, a fourth grade teacher, stated that Bean "requires extra help in understanding instructions," but that she was not "significantly different in strengths/weaknesses compared to her peers" and that she "pays attention fairly well in class." (R. 137.) Ms. Applewhite noted that, although Bean "sometimes . . . gets confused, . . . she doesn't become stubborn or oppositional unless a classmate becomes aware of or insensitive to her problem with the task." (*Id.*) The teacher also stated that Bean "gets along well with most of her classmates . . . [but] there are a few that she 'clashes' strongly with" and that "[t]hese problems don't occur very often, but they can become major conflicts quickly." (*Id.*) In addition, Ms. Lori

---

[4] Dr. Nolan also noted that Bean "sometimes can't concentrate or pay attention for long, gets teased a lot, has difficulty learning, is overweight, feels hurt when criticized and is tardy to school or class." (R. 555.)

Massey, a sixth grade teacher, noted that Bean "functions like any other sixth grade girl" and that she had a "good rapport with teachers and responds in an age appropriate way." (R. 271.) Ms. Tonita Bentley, an eighth grade teacher, stated that Bean's academic performance was "equal to normal, average students," that Bean responded well to teachers, and that she was "a very typical middle school student" and "socializes well." (R. 447-48.) Ms. Bentley assessed that Bean "can do very well when she chooses" and that she "cooperates well." (R. 447.) Bean's twelfth grade teacher[5] also assessed that Bean did not require special help to learn successfully and that her communication, social functioning, and concentration, persistence, or pace were appropriate for Bean's age. (R. 617-21.) Thus, the ALJ's determination that Ms. Rape's assessment that Bean exhibited no elevations in problem behaviors was consistent with other teacher questionnaires indicating that Bean's condition did not prevent her from performing successfully in a classroom setting is supported by substantial evidence.

In addition, the ALJ discounted Dr. Nolan's and Dr. Handal's opinions concerning Bean's mental and learning problems on the grounds that Bean's medical history and alleged symptoms were based on unsubstantiated reports and incredible subjective complaints made by Bean and her mother. In 1998, Dr. Nolan diagnosed Bean as suffering from major depressive disorder, recurrent, severe with psychotic features; obsessive compulsive disorder;

---

[5] Bean's twelfth-grade teacher's signature is difficult to decipher. Thus, the court is unable to identify the name of the teacher who completed this November 15, 2000, teacher questionnaire. As best as the court is able to determine, it appears that the teacher's initials are "R. L." (R. 621.)

phobia of large animals; and attention deficit hyperactivity disorder. (R. 556.) In a January 2003 supplemental residual functional capacity questionnaire, Dr. Handal indicated that Bean has moderate to marked difficulty in maintaining social functioning; marked deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; marked impairment of ability to respond to customary work pressures; marked impairment in the ability to understand, carry out, and remember instructions in a work setting; and marked impairment in the ability to respond appropriately to supervision in a work setting.[6] (R. 777.)

First, there are no reports that Bean suffered from obsessive compulsive features and depression with psychotic features in any school records or documentation from other medical sources. For example, in August 1998, Bean reported to Dr. Nolan and Dr. Handal that she began hearing voices one year before her examination (R. 549-551, 564-67); however, during a July 1997 evaluation by Dr. J. Walter Jacobs, a consultative psychologist, Bean denied suffering from hallucinations, compulsions, or somatic symptoms of depression. (R. 523.) Bean also did not report these symptoms to personnel at the mental health center. (R. 149-53, 199-201, 204-06.) Moreover, as previously discussed, none of Bean's teachers

---

[6] In her memorandum, Bean states that "the ALJ was not privy to the SQ of January 13, 2003." (Doc. No. 11, p. 8.) However, the record clearly demonstrates that the ALJ considered Dr. Handal's supplemental residual functional capacity questionnaire and concluded that the psychiatrist's opinion was entitled to "little probative weight" as it was based on "unsubstantiated and not credible subjective complaints made by the claimant and her mother." (R. 40.)

reported that Bean exhibited any signs of serious behavioral problems.[7]

The record also includes several other occasions when Bean's and her mother's reports to Dr. Nolan and Dr. Handal were in conflict with school records and other documentation. For example, Bean's mother reported to the physicians that Bean had difficulty interacting with other children; however, the teacher questionnaires indicate that Bean socialized well with her peers. (R. 271, 447-48, 564, 617-21.) In addition, although Bean's mother reported to Dr. Nolan that Bean was in the "Title I" program (R. 548), school records indicate that she was ineligible for special education classes. (R. 442.) Finally, in August 1998, Bean reported to Dr. Handal that she had never received psychological testing to determine her intelligence (R. 566); however, it is clear that Bean was administered intelligence testing on several occasions. (R. 204-06, 433-42, 523-24.) Thus, the record clearly demonstrates that Bean's and her mother's reports to Dr. Nolan and Dr. Handal concerning Bean's mental and social difficulties were inconsistent with other medical reports and school records. The ALJ found that the claimant and her mother were not credible. (R. 37) In reaching that conclusion, the ALJ thoroughly considered the full record supporting that finding including comments by medical providers, the claimant's uncooperativeness and lack of effort in testing, intelligence tests, and school records which are generally

---

[7] The court recognizes that Bean was reprimanded on a few occasions for misbehaving while attending elementary school. The record indicates that Bean's third grade teacher reported that Bean spread rumors and threatened another child with physical harm. (R. 118.) In fourth grade, Bean was suspended from physical education classes for one week for acting disrespectful and talking and received a one-day in-school suspension for defiance and disrupting class. (R. 196, 198.) On her third and fourth grade report cards, Bean received an "N" in conduct. (R. 120, 131.) In addition, Bean's third-grade teacher noted that her "behavior needs improvement." (R. 131.)

inconsistent with the mother's reports of the claimant's behavior. In short, the ALJ's credibility finding is amply supported by substantial evidence. This finding is a solid basis for discounting both Dr. Nolan and Dr. Handal's conclusions because they heavily relied on report's from the claimant's mother.

In addition, the record demonstrates that medical records from other sources were not considered by Dr. Nolan and Dr. Handal at the time they conducted their evaluations of Bean. For instance, neither counselor referred to Dr. Patricia Block's notes from March 1995, in which the general practitioner noted that she "suspect[ed] that many of Maria's symptoms . . . are functional. She has been seen with numerous complaints in the past."[8] (R. 274.) In June 1995, Dr. Block noted that "[Bean] has been seen in the past for rather nebulous causes and mother has been trying to get her on Disability so I am not sure how much of this might be subtly encouraged by the family as a whole."[9] (R. 499.) The court also notes that Dr. Nolan and Dr. Handal did not refer to Bean's school records, such as documentation indicating that Bean had successfully passed every grade in school and received positive comments from her teachers, in their evaluations.

For these reasons, the court concludes that the ALJ's discounting of Dr. Nolan's and Dr. Handal's opinions is supported by substantial evidence. Accordingly, the court will enter

---

[8] During a visit to Dr. Block's office on March 7, 1995, Bean complained of attention deficit disorder, throat and hand pain, and a sore left toe, and her mother expressed concern that Bean bites her fingernails excessively. (R. 274.)

[9] The record indicates that Bean complained of knee and arm pain during this doctor's visit. (R. 499.)

11

a separate, final judgment affirming the Commissioner's decision.

Done this 28th day of September, 2006.


                                             /s/Charles S. Coody
                                    CHARLES S. COODY
                                    CHIEF UNITED STATES MAGISTRATE JUDGE